**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NATIONAL SHOPMEN PENSION FUND,** )<br>**AND ITS BOARD OF TRUSTEES** )<br> )<br>          **Plaintiffs,** )<br> )<br>       **v.** )<br> )<br> )<br>**RUSCO STEEL COMPANY,** *et al.* )<br> )<br>          **Defendants.** )<br> ) | **Civil Action No. 07-cv-110** |

**MOTION FOR DEFAULT JUDGMENT**

Plaintiffs National Shopmen Pension Fund ("Fund") and its Trustees respectfully move this Court, pursuant to Fed. R. Civ. P. 55, for judgment by default in favor of the Plaintiffs and against the Defendants, Rusco Steel Company a.k.a. Rusco Steel Co. ("Rusco"), Rusco Steel Fabrication Company, Russell Investments, Inc., and Robert S. Russell ("Defendants"), and granting the relief requested by the Plaintiffs. Plaintiffs are entitled as a matter of law to a default judgment in its favor, consisting of the following:

As to Plaintiffs, Fund and its Trustees, against Defendants:

      (1)     withdrawal liability in the amount of $1,345,389.00;

      (2)     liquidated damages at the rate of 20% of the delinquent withdrawal liability amount equal to $269,077.80;

      (3)     interest at the rate of 5% per annum for the months of March 2004 through May 2004 and September 2004 through February 2005, 4% per annum for the months of July 2004 through August 2004, and 6% per annum for the month of March 2005 on the delinquent payments from date due through the date of default in the amount of $1,633.52, and interest on

the entire withdrawal liability amount from the date of default through September 5, 2007 at the rate of 6% per annum in the amount of $192,851.38;

(a)    Attorneys' fees and costs incurred in this matter from March 18, 2004 to July 25, 2007 in the amount of $10,982.88;

(b)    Such other relief as the court may deem proper.  In support, Plaintiffs state as follows, and submit, declarations of A. H. Higgs and Marc Rifkind, which are incorporated herein by reference:

1.    On February 14, 2007, Plaintiffs filed a complaint against Defendants to collect withdrawal liability due and owing to the Fund.

2.    Defendants failed to file an answer or other responsive pleading within the time limit prescribed by Fed. R. Civ. P. 12.

WHEREFORE, Plaintiffs, the Fund and its Trustees, request as follows:

(a)    That Defendants be adjudged to be in default; and

(b)    That default judgment be entered against Defendants in conformity with the relief requested in Plaintiffs' Complaint in this action.  (A proposed order, which grants the abovementioned requests and incorporates the amounts reflected in the declarations accompanying this motion, is attached for the Court's consideration.)

Respectfully submitted,

s/ Marc Rifkind
Marc H. Rifkind, Esq. (D.C. Bar No. 416183)
SLEVIN & HART, P.C.
1625 Massachusetts Avenue, NW, Suite 450
Washington, DC   20036
202-797-8700 (Telephone)
Dated:  September 19, 2007        202-234-8231 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify this <u>19</u> day of September, 2007, that I caused to be served a copy of the foregoing *Motion for Default Judgment, Memorandum of Points and Authorities In Support of Motion for Default Judgment, Declaration of Marc H. Rifkind, Declaration of A. H. Higgs*, a proposed *Order and Judgment*, and supporting exhibits by sending a copy of same via overnight delivery, postage-prepaid to the following parties:

> William E. O'Gara
> Pannone, Lopes & Devereaux
> 1800 Financial Plaza
> Providence, RI 02903

Respectfully submitted,

 s/ Marc Rifkind_____
Marc Rifkind, Esq. (D.C. Bar No. 41618)
SLEVIN & HART, P.C.
1625 Massachusetts Avenue, NW, Suite 450
Washington, D.C. 20036
(202) 797-8700 (Telephone)
(202) 234-8231 (Facsimile)

Dated:  September 19, 2007

DM: 57923

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL SHOPMEN PENSION FUND, AND ITS BOARD OF TRUSTEES<br><br>Plaintiffs,<br><br>v.<br><br>RUSCO STEEL COMPANY, *et al.*<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 07-cv-110<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT

Plaintiffs, National Shopmen Pension Fund and its Trustees (hereinafter the "Fund"), submit this Memorandum in Support of their Motion for Default against Defendants, Rusco Steel Company a.k.a. Rusco Steel Co. ("Rusco"), Rusco Steel Fabrication Company, Russell Investments, Inc., and Robert S. Russell ("Defendants"). A Complaint was filed against Defendants in this action on February 14, 2007, for withdrawal liability owed, interest on the withdrawal liability amount owed at the rate prescribed by Section 6621 of the Internal Revenue Code, liquidated damages equal to 20% of the withdrawal liability amount, and attorneys' fees and costs incurred in connection with the collection of the delinquent withdrawal liability. A copy of the Complaint is attached as Exhibit 1.

### I. FACTS

1.     The Fund is a multiemployer joint labor-management defined benefit pension fund established pursuant to Section 302(c) of the Labor Management Relations

Act, 29 U.S.C. 186(c). It is subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C.§1000 et seq. The Pension Fund maintains its offices and is administered in the District of Columbia. Its purpose is to provide retirement and related benefits to the eligible employees of employers who contribute to the Fund pursuant to various collective bargaining agreements with local unions affiliated with the Shopmen's Local Unions of the International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO.

2.    Defendants Rusco Steel Company a.k.a. Rusco Steel Co., Rusco Steel Fabrication Company, and Russell Investments, Inc. are corporations incorporated in the state of Rhode Island. Defendant Robert Russell is an individual who resides in the state of Rhode Island. Defendants' mailing address is 25 Bleachery Court, Warwick, RI, 02886. The business of the Defendants affects commerce within the meaning of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

3.    At all times material to this action, Defendants and Local Union No. 523 of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers were parties to, and bound by, a Collective Bargaining Agreement covering Defendants' bargaining unit employees represented by Local 523. The Agreement requires that Defendants contribute to the Fund on behalf of its covered employees.

4.    As of January 2003, Defendants withdrew from the Fund, within the meaning of ERISA § 4203(a), 29 U.S.C. § 1383(a). Section 4201 of ERISA, 29 U.S.C. § 1381, and the Fund's Rules and Regulations require that withdrawal liability be assessed by the Fund against contributing employers who withdrew from the Fund after April 28, 1980. Withdrawal liability is determined by allocating a portion of the Fund's unfunded vested benefits to the withdrawing employer pursuant to one of the methods authorized

by ERISA. The Trustees of the Fund have adopted the "attributable rule" for determining withdrawal liability which is set forth in ERISA § 4211(c)(4), 29 U.S.C. § 1391(c)(4).

    5.    The Fund's actuarial consultants, the Segal Company, calculated the withdrawal liability of Defendants to be $5,397,100.00, as of November 10, 2003.

    6.    By certified letter to Defendants, dated February 27, 2004, the Fund Administrator notified Defendants of their withdrawal liability to the Fund and established a schedule for the payment of withdrawal liability, as required by ERISA § 4219, 29 U.S.C. § 1399. That schedule provided that Defendants pay $5,773.00 per month for 240 months resulting in a total payment of $1,385,520.00, the twenty-year repayment plan limit under ERISA § 4219(c)(1)(B), 29 U.S.C. § 1399. The first payment was due on or before March 29, 2004.

    7.    Defendants made their first seven scheduled withdrawal liability payments, but failed to make subsequent payments. By letter dated February 15, 2005, Fund Counsel notified Defendants of their payment delinquency and that failure to pay within 60 days would constitute default. The letter demanded Defendants make their delinquent withdrawal liability payments or alternately, pay a lump-sum settlement in the amount of $1,345,389.00.

    8.    By letter dated June 15, 2004, from Defendants' counsel, William E. O'Gara, Esq. to the Fund office, Defendants claimed that the Fund improperly assessed withdrawal liability. Further, the Defendants disputed the Fund's revised determination of withdrawal liability. Defendants filed a demand for arbitration on June 24, 2004, with the American Arbitration Association. Defendants have not pursued arbitration since filing in June 2004, and have thereby waived their right to arbitrate.

9.     Defendants have defaulted on their obligation to pay withdrawal liability to the Fund, because it failed to make the payment due in November 2004, and any payment thereafter and has not cured its failure to pay within 60 days after receipt of notification of its delinquency, as required by ERISA § 4219(c)(2), 29 U.S.C. § 1399(c)(2).

10.    Under ERISA §§ 502, 515 and 4301(b), 29 U.S.C. §§ 1132, 1145 and 1451(b) and the Rules and Regulations of the Fund, an employer who defaults in making payments of withdrawal liability is obligated to pay interest at the rate of 6% per annum on the total amount of outstanding liability from date due until date paid plus liquidated damages equal to 20% of the withdrawal liability, and attorneys' fees and costs.

11.    In January 2003, Defendant Robert S. Russell ("Russell") sold the assets of Rusco Steel and Rusco Investments, including real estate to Rusco Enterprises, Inc. and Rusco Real Estate Company for a total of $2,330,401.00.  Russell did not use the proceeds of that sale to pay his withdrawal liability owed to the Fund.  Russell holds the proceeds of the sale of Defendants' assets in trust for the benefit of the Fund. Furthermore, Russell exercised common control over the Defendant Corporations and the assets and funds of those Corporations and used those assets for his personal benefit, in violation of ERISA § 403(c)(1), 29 U.S.C § 1101(c)(1).

12.    Defendant Russell is liable to the Fund for the full amount of any judgment obtained in this action against Rusco Steel and Russell Investments to the extent of the proceeds he received from the sale of the Defendant corporations' assets described above.

13.    Defendants owe withdrawal liability in the amount of $1,345,389.00.  See Declaration of Fund Administrator A.H. Higgs, Jr. and Exhibit B.

14. Defendants owe interest on the delinquent payments from date due through the date of default at the rate prescribed by Section 6621 of the Internal Revenue Code in the amount of $1,633.52, and interest on the entire withdrawal liability amount from the date of default through September 5, 2007 at the rate of 6% per annum in the amount of $192,851.38.

15. Defendants owe liquidated damages at the rate of 20% of the withdrawal liability amount equal to $269,077.80.

16. Attorneys' fees and costs incurred by this firm for the period March 18, 2004 through July 25, 2007 are $10,982.88. See Declaration of Marc H. Rifkind, Esq.

## II. THE FUND IS ENTITLED TO ENTRY OF A DEFAULT JUDGMENT

17. ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), provides as follows:

In any action under this title by a fiduciary for or on behalf of a plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan -

    (A)    the unpaid contributions,

    (B)    interest on the unpaid contributions,

    (C)    an amount equal to the greater of:

        (i)    interest on the unpaid contributions, or

        (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under sub-paragraph (A),

    (D)    reasonable attorneys' fees and costs of the action, to be paid by the defendant, and

(E)     such other legal or equitable relief as the court deems appropriate. For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986.

ERISA § 515, 29 U.S.C. § 1145, provides:

Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

18.     Defendants are liable for withdrawal liability in the amount of $1,345,389.00.

19.     Defendants are also liable for liquidated damages at the rate of 20% of the delinquent withdrawal liability amount equal to $269,077.80.

20.     Defendants are also liable for interest at the rate prescribed by Section 6621 of the Internal Revenue Code from date due through the date of default in the amount of $1,633.52, and interest on the entire withdrawal liability amount from the date of default through September 5, 2007 at the rate of 6% per annum in the amount of $192,851.38.

21.     Defendants are further liable for attorneys' fees and costs in the amount of $10,982.88.

## CONCLUSION

Plaintiffs request that the Court enter an Order and Judgment for the Plaintiffs in the total amount of $1,819,934.58.

Respectfully submitted,


/s/ Marc Rifkind
Marc H. Rifkind, Esq. (D.C. Bar No. 416183)
SLEVIN & HART, P.C.
1625 Massachusetts Ave., NW, Suite 450
Washington, D.C.  20036
(202) 797-8700 (Telephone)
(202) 234-8231 (Facsimile)


Dated:  September 19, 2007          Counsel for Plaintiffs


DM: 63720

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

FEB 1 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

NATIONAL SHOPMEN PENSION FUND,
1750 New York Avenue, NW
Washington, DC 20006

and

JOHN KERR,
Ohio Valley Steel Company
1721 Wetzel Street
Post Office Box 911
Wheeling, WV 26003

and

ANTHONY WALENCIK,
International Association of Iron Workers
1750 New York Avenue, N.W. Suite 400
Washington, D.C. 20006-5301

and

JAMES R. KING,
3708 46th Avenue, South
Minneapolis, MN 55406

and

TIMOTHY F. O'CONNELL,
The Bilco Company
Post Office Box 1203
New Haven, CT 06505

and

RONALD T. BRUCE,
Builders Steel Company
Box #12538
Kansas City, MO 64116

                    **Plaintiffs,**

Civil Action No. 07-cv-110

|  |  |
|---|---|
| v. | ) |
|  | ) |
|  | ) |
| **RUSCO STEEL COMPANY a.k.a. RUSCO STEEL CO.** | ) |
| 25 Bleachery Court | ) |
| Warwick, RI 02886 | ) |
|  | ) |
| Serve: Robert S. Russell, President | ) |
| 25 Bleachery Court | ) |
| Warwick, RI 02886 | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **RUSCO STEEL FABRICATION COMPANY** | ) |
| 25 Bleachery Court | ) |
| Warwick, RI 02886 | ) |
|  | ) |
| Serve: Robert S. Russell, President | ) |
| 25 Bleachery Court | ) |
| Warwick, RI 02886 | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **RUSSELL INVESTMENTS, INC.** | ) |
| 25 Bleachery Court | ) |
| Warwick, RI 02886 | ) |
|  | ) |
| Serve: Robert S. Russell, President | ) |
| 25 Bleachery Court | ) |
| Warwick, RI 02886 | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **ROBERT S. RUSSELL** | ) |
| 25 Bleachery Court | ) |
| Warwick, RI 02886 | ) |
|  | ) |
| **Defendants.** | ) |
|  | ) |

## FIRST AMENDED COMPLAINT
### (FOR FAILURE TO PAY WITHDRAWAL LIABILITY)

Plaintiffs, by counsel, hereby complain of Defendants as follows:

    1.    Jurisdiction is conferred upon this Court by Section 301 of the Labor Management Relations Act (29 U.S.C. §185), and Sections 502 and 515 of the Employee Retirement Income Security Act, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (29 U.S.C. §1132 and §1145) and 28 U.S.C. §1331.

    2.    Plaintiff National Shopmen Pension Fund (hereinafter the "Fund") is a joint labor-management pension fund established pursuant to Section 302(c) of the Labor Management Relations Act (29 U.S.C. §186(c)). Its purpose is to provide pension, retirement and related benefits to the eligible employees of employers who contribute to the Fund pursuant to various collective bargaining agreements with affiliated Shopmen's Local Unions of the International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO. Plaintiffs, Walencik, Kerr, King, O'Connell, and Bruce, are Trustees of the Fund. The Fund is administered in the District of Columbia.

### Introduction

    3.    This claim is brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001 et seq. Plaintiffs seek a judgment awarding delinquent contributions interest, liquidated damages, attorneys' fees and costs.

### Jurisdiction and Venue

    4.    This Court has jurisdiction over this action under §§ 502(e), 502(f), and 4301(c) of

ERISA, 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c). Venue lies in this Court under §§ 502(e)(2) and

4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Fund's are administered at their

principal place of business in the District of Columbia.

**Parties**

 5. Plaintiffs are comprised of individual trustees who are "fiduciaries" with respect to

the Fund as defined in § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are collectively the "plan

sponsor" within the meaning of § 4001(a)(10)(A) of ERISA, 29 U.S.C. § 1301(a)(10)(A). The Funds

are a multiemployer pension plan within the meaning of §§ 3(37) and 4001(a)(3) of ERISA, 29

U.S.C. §§ 1002(37) and 1301(a)(3). The Trustees administer the Fund's at 1750 New York Ave.

NW Washington, D.C. 20006-5301. Pursuant to §§ 502(a)(3), 4221(b)(1) of ERISA, 29 U.S.C. §§

1132(a)(3), 1401(b)(1), and 1451(a)(1), Plaintiffs are authorized to bring this action on behalf of the

Funds, its participants, and beneficiaries.

 6. Defendants Rusco Steel Company a.k.a. Rusco Steel Co. ("Rusco Steel"), Rusco Steel

Fabrication Company ("Rusco Steel Fab"),  and Russell Investments, ("Russell Investments") are

employers in an industry affecting commerce  within the meaning of Sections 3(5) of the Employee

Retirement Income Security Act of 1974 (29 U.S.C. Sec. 1002(5)), and the Labor Management

Relations Act of 1947 (29 U.S.C. Sec. 151 et seq.).

 7. Defendants, Rusco Steel, Rusco Steel Fab and Russell Investments are corporations

organized under the laws of Rhode Island, with principal offices located at 25 Bleachery Court,

Warwick, Rhode Island 02886.

 8. Defendant Robert S. Russell is the owner and sole shareholder of Rusco Steel, Rusco

Steel Fab and Russell Investments.

 9. Defendants, Rusco Steel, Rusco Steel Fab and Russell Investments operate out of the

same location.

10.    Defendant Rusco Steel and Shopmen's Local Union No. 523 of the International

Association of Bridge, Structural and Ornamental Iron Workers (affiliated with AFL-CIO)

(hereinafter "Union" or "Local 523") were parties to and were bound by successive collective

bargaining agreements requiring contributions to the Fund for employees covered thereby.

## Claim by Plaintiff National Shopmen Pension
## Fund against Defendants Joint and Severally for Withdrawal Liability

11.    The allegations contained in paragraphs 1 through 10 are incorporated herein by

reference.

12.    ERISA, § 4201-4225, 29 U.S.C. § § 1381 - 1461 establishes withdrawal liability

for multiemployer plans.  ERISA, § 4201, 29 U.S.C. § 1381, establishes that if an employer

withdraws from a multiemployer plan then the employer is liable to the plan for the amount

determined to be withdrawal liability.

13.    Section 4001(b)(1) extends liability for employer withdrawal liability to all "trades

or businesses that are under common control" with the employer as that terms is defined in Treasure

Regulations §1.414(c) .

14.    On or about January 1, 2003, Rusco Steel effected a "complete withdrawal" from the

NPF within the meaning of ERISA Section 4203(a), 29.U.S.C. §1383(a).

15     Section 4201 of ERISA and the Fund's Rules and Regulations require that withdrawal

liability be assessed by the Fund against contributing employers who withdrew from it after April

28, 1980 (29 U.S.C. § 1381).

16.    As of the date of withdrawal, Defendants Rusco Steel, Rusco Steel Fab and Russell

Investments were trades or business under common control" with Defendant Garcia Tech within the meaning of Treasury Regulation §1.414(c) .

17.     Withdrawal liability is determined by allocating a portion of the Fund's unfunded vested benefits to the withdrawing employer pursuant to one of the methods authorized by ERISA. The Trustees of the Fund have adopted the "attributable rule" for determining withdrawal liability, which is set forth in ERISA Section 4211(c)(4) (29 U.S.C. §1391(c)(4)).

18.     The Fund's actuarial consultants, the Segal Company, calculated the withdrawal liability of Defendants.

19.     By certified letter to Defendants, dated February 27, 2004, the Fund Administrator notified Defendants of their withdrawal liability to the Fund and established a schedule for the payment of withdrawal liability, as required by ERISA Section 4219 (29 U.S.C. § 1399). That schedule provided that Defendants pay $5,773.00 per month for 240 months resulting in a total payment of $1,285,520.00, the twenty-year repayment plan limit under ERISA Section 4219 (c)(1)(B). The first payment was due on March 29, 2004.

20.     Defendants made their first seven scheduled withdrawal liability payments but has failed to make the subsequent payments. By letter dated February 15, 2005, Fund Counsel notified Defendants of their payment delinquency and that if it failed to pay within 60 days that it would be in default. The letter demanded Defendants make their delinquent withdrawal liability payments or alternately, a lump-sum settlement in the amount of $1,285,520.00.

21.     By letter dated June 15, 2004 from Defendants' counsel, William E. O'Gara, Esq. to the Fund office, Defendants informed the Fund that his client believed withdrawal liability was improperly assessed against the Defendants and that Defendants dispute the Fund's revised determination of withdrawal liability.

22.    Defendants filed a demand for arbitration on June 24, 2004 with the American Arbitration Association.

23.    Defendants have abandoned the arbitration since they have not pursued it since filing for arbitration in June 2004 and have thereby waived their right to arbitrate.

24.    Defendants have defaulted on their obligation to pay withdrawal liability to the Fund because it failed to make the payment due in November 2004 and any payment thereafter and has not cured his failure within 60 days after receipt of notification of their delinquency, as required by ERISA Section 4219(c)(2) (29 U.S.C. § 1399(c)(2)).

25.    Under ERISA Sections 502, 515 and 4301(b) (29 U.S.C. §§ 1132, 1145 and 1451(b)) and the Rules and Regulations of the Fund, an employer who defaults in making payments of withdrawal liability is obligated to pay interest at the rate of 8% per annum on the total amount of outstanding liability from date due until date paid plus liquidated damages equal to 20% of the withdrawal liability, and attorneys' fees and costs.

WHEREFORE, Plaintiffs pray for the following relief, jointly and severally:

(a) judgment in the full amount of withdrawal liability owed the Fund;

(b) interest on the delinquent withdrawal liability payments at the rate of 8% per annum;

(c) liquidated damages in the amount of 20% of the delinquent amount;

(d) an award of attorneys' fees and costs of collection incurred in connection with collection of the delinquent withdrawal liability; and

(e) such other and further relief as this Court deems appropriate.

## Count II: Personal Liability of Robert S. Russell

26.    The allegations contained in paragraphs 1 through 10 and 12 through 25 are incorporated herein by reference.

27.    In January 2003, Defendant Robert S. Russell sold the assets of Rusco Steel and Rusco Investments, including real estate to Rusco Enterprises, Inc. and Rusco Real Estate Company for $2,330,401.

28.    Defendant Robert S. Russell did not use the proceeds of that sale to pay it withdrawal liability to the Fund.

29.    Defendant Russell holds the proceed of the sale of Defendants' assets in trust for the benefit of the Fund.

30.    Robert S. Russell exercised common control over the Defendant Corporations and the assets and funds of those Corporations and used those assets for his personal benefit.

31.    Defendant Russell is liable to the Fund for the full amount of any judgment obtained in this action against Rusco Steel, and Russell Investments to the extent of the proceeds he received from the sale of the sale described in paragraph 27, above..

### Prayer for Relief

**WHEREFORE**, the Fund demands the following relief:

Judgment in favor of the Plaintiffs and against Defendants joint and severely for:

1.    For the withdrawal liability in the amount of $1,285,520.00, interest at the rate of prescribed by Section 6621 of the Internal Revenue Code from date due to date paid and liquidated damages equal to the greater of interest or 20

percent of the delinquent contributions

2.   Attorneys fees, audit fees and costs incurred by the Fund in this action

3.   For such other, further or different relief as the Court deems just and equitable.

Respectfully submitted,

Dated: 2/13/07

Marc Rifkind, Esq. (D.C. Bar No. 416183)
SLEVIN & HART, P.C.
1625 Massachusetts Avenue, NW, Suite 450
Washington, DC   20036
202-797-8700  (Telephone)
202-234-8231  (Facsimile)

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that on this 13th day of February 2007, a copy of the foregoing Amended Complaint was served upon the below parties representing the Defendants listed in the initial and Amended Complaints. Service of the newly named Defendant on the Amended Complaint is done by way of certified mail in accordance with Fed. R. Civ. P. 5.3, the remaining parties are served via first-class mail, postage prepaid:

> William E. O'Garra
> Holland & Knight LLP
> One Financial Plaza, Suite 1800
> Providence, RI 02903
>
> and
>
> Steven G. Brown, Esq.
> Petrikin, Wellman, Damico, Brown & Petrosa
> 109 Chelsey Drive
> Media, PA 19063

Marc Rifkind, Esq.

@PFDesktop\::ODMA/PCDOCS/SLEVINHARTDM/32511/1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL SHOPMEN PENSION FUND, AND ITS BOARD OF TRUSTEES | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 07-cv-110 ) |
| RUSCO STEEL COMPANY, *et al.* | ) ) |
| Defendants. | ) ) |

## DECLARATION OF A.H. HIGGS, JR.

| | |
|---|---|
| WASHINGTON | ) |
| | ) ss: |
| DISTRICT OF COLUMBIA | ) |

A.H. Higgs deposes and says:

1.  I am a Fund Administrator of the National Shopmen Pension Fund (the "Fund"). I have personal knowledge of the facts set forth herein, and I would be competent to testify as to these facts if called as a witness in the trial of this matter.  I make this affidavit in support of the Plaintiffs' Motion for Default Judgment.

2.  In my capacity as an Administrator, I am responsible for the assessment and collection of withdrawal liability.  I have specific knowledge of the withdrawal liability assessments, payment schedules, and delinquencies of employers obligated to make withdrawal liability payments to the Fund.  True and accurate copies of the Fund's policies with respect to withdrawal liability are attached hereto as Exhibit A and incorporated herein by reference.

1

3.      Under my dominion and control are files maintained for every employer that has withdrawn from participation in the Fund, including a file for the matter referenced in the above caption.

4.      The Fund is a multiemployer pension plan administered by the Board of Trustees at 1750 New York Avenue, N.W., Washington, D.C. 20006-5301.

5.      Defendants were signatory to a collective bargaining agreement with Shopmen's Union Local 523, under which Defendants made contributions to the Fund on behalf of their employees who were covered by the agreement.

6.      The Fund has determined that on or about January 2003, Defendants ceased to have an obligation to contribute to the Fund; thereby withdrawing from the Fund in a statutory "complete withdrawal."

7.      The Fund determined that as a result of this complete withdrawal, Defendants incurred withdrawal liability to the Fund in the amount of $1,385,520.00.

8.      Attached to this Affidavit as Exhibit B, is an account breakdown setting forth the total amount of withdrawal liability owed to the Fund.

9.      Exhibits C and D are true and accurate copies of the notice and demand letters dated February 27, 2004 and February 15, 2005.

10.     The February 27, 2004 letter informed Defendants that they were required to pay withdrawal liability assessed against them in the amount of $1,385,520.00 and that they must discharge their liability in 240 monthly payments of $5,773.00, beginning on March 29, 2004.

11.     Defendants made their first seven withdrawal payments but ceased to pay after September 2004.

12.    By letter dated February 15, 2005, Fund Counsel notified Defendants of their payment delinquency for the months of November 2004 through February 2005 and stated that if Defendants failed to pay within 60 days of the date of the letter that they would be in default.

13.    Defendants subsequently failed to cure its delinquency within the sixty-day time period.

14.    The total amount due as of September 5, 2007 to the Fund, exclusive of attorneys' fees and costs, is $1,808,951.70. This amount consists of $1,345,389.00, the remaining amount of withdrawal liability due the Fund per the withdrawal liability payment schedule; $1,633.52 in interest at the rate of 5% per annum for the months of March 2004 through May 2004 and September 2004 through February 2005, 4% per annum for the months of July 2004 through August 2004, and 6% per annum for the month of March 2005 on the delinquent withdrawal payments from date due through the date of default and $192,851.38 in interest on the entire remaining withdrawal liability amount, calculated from the date of default through September 5, 2007 at the rate of 6% per annum; and $269,077.80 in liquidated damages (the greater of 20% of the withdrawal liability or the interest), as allowed pursuant to 29 U.S.C. § 1132(g)(2).


Under penalty of perjury, I declare that the foregoing to be true and correct according to the best of my knowledge, belief, or memory.

_____
A. H. Higgs

Executed on:  2007 - 09 - 07

DM: 61000

3

# Exhibit A

# *Rules and Regulations of the*

# *National Shopmen Pension Plan*

**(Amended and Restated Effective July 1, 2000)**

transfers such work to another location; or

(B)    permanently ceases to have an obligation to contribute with respect to work performed at one or more but fewer than all of its facilities, but continues to perform work at the facility of the type for which the obligation to contribute ceased.

A cessation of obligations under a Collective Bargaining Agreement shall not be considered to have occurred solely because another agreement requiring Contributions has been substituted for it.

(b)    Subsection (a)(1) shall not apply to any year before 1983.

(c)    Subsection (a)(2) shall not apply with respect to a cessation of the obligation to contribute occurring before September 26, 1980.

(d)    In applying subsection (a)(1), the number of contribution base units for which the employer was obligated to contribute for any Plan Year before April 29, 1980, shall be deemed to be equal to the number of such contribution base units for the last Plan Year ending before such date.

### Section 8.04. Sale of Assets.

(a)    A Complete or Partial Withdrawal of an employer (the "seller") shall not be deemed to occur solely because, as a result of a bona fide, arm's length sale of assets to an unrelated party (the "purchaser"), the seller ceases covered operations or ceases to have an obligation to contribute for such operations, if:

(1)    the purchaser has an obligation to contribute with respect to the operations for substantially the same number of contribution base units for which the seller had an obligation to contribute;

(2)    the purchaser provides to the Plan, for the first 5 years following the year of the sale, a bond issued by an acceptable corporate surety company, or an amount held in escrow by a bank or similar financial institution satisfactory to the Trustees, in an amount equal to the greater of:

(A)    the average annual Contribution that the seller was required to make with respect to the operations under the Plan for the last 3 years preceding the year of the sale, or

(B)    the annual Contribution that the seller was required to make with respect to the operations under the Plan for the year preceding the year of the sale,

which bond or escrow shall be paid to the Plan if the purchaser withdraws, or fails to make a Contribution when due, at any time during the first 5 years following the year of the sale; and

(3)    the contract for the sale provides that, if the purchaser withdraws in a Complete Withdrawal or a Partial Withdrawal with respect to operations during such first 5 years, the seller is secondarily liable for any Withdrawal Liability it would have had with respect to the operations (but for this Section) if the liability of the purchaser is not paid.

(b)    If the purchaser withdraws before the end of the fifth year following the year of the sale, and fails to make any Withdrawal Liability payment when due, then the seller shall pay to the Plan an amount equal to the payment that would have been due from the seller but for this Section.

(c)    (1)    If all, or substantially all, of the seller's assets are distributed, or if the seller is liquidated before the end of the fifth year following the year of sale, then the seller shall provide a bond or amount in escrow equal to the present value of the Withdrawal Liability the seller would have had but for this subsection.

        (2)    If only a portion of the seller's assets are distributed during the first 5 years following the year of the sale, then a bond or escrow shall be required, in accordance with regulations prescribed by PBGC, in a manner consistent with paragraph (1).

(d)    The liability of the party furnishing a bond or escrow shall be reduced, upon payment of the bond or escrow to the Plan, by the amount thereof. The Trustees shall have the authority to waive the bond requirement set out herein and in ERISA Section 4204 if a request for variance is filed pursuant to 29 CFR §4204.11 and they are satisfied that it is appropriate to waive such requirement.

(e)    The liability of the purchaser under this Article shall be determined as if the purchaser had been required to contribute in the year of the sale and the four preceding years the amount the seller was required to contribute for such operations for such five years.

(f)    The term "unrelated party" means a purchaser or seller that does not bear a relationship to the seller or purchaser, as the case may be, that is described in Section 267(b) of the Code or in regulations prescribed by PBGC.

### Section 8.05.  Change in Business Form or Suspension of Contributions.

(a)    A Contributing Employer shall not be considered to have withdrawn solely because it

        (1)    ceases to exist by reason of a change in corporate structure as described in Section 4062(d) of ERISA or a change to an unincorporated form of business enterprise, if the change causes no interruption in Contributions or obligations to contribute, or

(2)     suspends Contributions during a labor dispute involving its Employees.

(b)     A successor or parent corporation or other entity resulting from a change described in subsection (a)(1) shall be considered the original employer.

### Section 8.06.  *Amount of Complete Withdrawal Liability.*

(a)     A Contributing Employer's liability for a Complete Withdrawal, before the application of Section 8.08 or 8.11(g), is the amount (not less than zero), determined as hereinafter provided in this Section, of:

    (1)     the Plan's unfunded Vested benefits that are attributable to service with the employer; and

    (2)     the Contributing Employer's proportionate share of any unfunded Vested benefits that are not attributable to service with the employer or other employers who were obligated to contribute in the year preceding the year of withdrawal (determined as of the end of the Plan Year preceding the year of withdrawal),

reduced, if appropriate, by the application of subsection (g).

(b)     The value of the Plan's unfunded Vested benefits that are attributable to service with the employer is equal to the value of the Plan's Vested benefits that are attributable to service with the contributing Employer reduced by the share of the Plan's assets that is allocated to the Contributing Employer.

(c)     The amount of the Plan's assets for the purpose of subsection (b) is equal to the Plan's total assets multiplied by a fraction:

    (1)     the numerator of which is the value of Vested benefits that are attributable to service with employers that had an obligation to contribute in the year preceding the year of withdrawal, and

    (2)     the denominator of which is the value of all Vested benefits.

(d)     The share of the Plan's assets that is allocated to the Contributing Employer is equal to the amount of the Plan's assets determined under subsection (c), multiplied by a fraction:

    (1)     the numerator of which is the sum of the Contributions (accumulated with interest) made by the employer for all years through the year preceding the year of withdrawal, less the sum of the benefit payments (accumulated with interest) made to Participants and their Beneficiaries for such years that are attributable to the service with such Continuing Employer, and

    (2)     the denominator of which is the sum of the Contributions (accumulated

with interest) made, for all years through the year preceding the year of withdrawal, by all Employers who had an obligation to contribute for the year preceding the year of withdrawal, less the sum of the benefit payments (accumulated with interest) made to Participants and their Beneficiaries for such years that are attributable to service with such employers. For purposes of this subsection, interest shall be at the rates used for actuarial valuation purposes.

With regard to any merger where past records are incomplete, the assets allocable to any employer who had contributed to that plan shall be determined using a formula for periods prior to the merger. The formula is "Contributions minus benefits with interest" as of the merger date and shall be the amount transferred as of the merger date times the ratio of (a) future service of active Participants as of the date of merger for that employer to (b) that for all employers participating (contributing) to the Plan at the merger date.

(e)     The value of the Plan's unfunded Vested benefits that are not attributable to service with Employers that were obligated to contribute in the year preceding the year of withdrawal is equal to the total value of such Vested benefits reduced by the excess of the Plan's total assets over the amount determined in subsection (c), and further by the value of all outstanding claims for Withdrawal Liability that can reasonably be expected to be collected with respect to employers that withdrew before the year preceding the year of withdrawal.

The value of unfunded Vested benefits attributable to Partial Withdrawals prior to September 26, 1980 (which are exempt from Withdrawal Liability under ERISA Section 4217) shall be considered part of the unattributable liability.

(f)     (1)     For withdrawals prior to September 22, 1983, the employer's proportionate share described in Section (a)(2) is an amount which bears the same ratio to the amount determined in subsection (e) as the amount determined under subsection (b) that the Employer bears to the sum of the amounts determined under subsection (b) for all Employers.

        (2)     For withdrawals on or after September 22, 1983, the Employer's proportionate share described in subsection (a)(2) is an amount which bears the same ratio to the amount determined in subsection (e) as the amount of Contributions for the five Plan Years prior to the year of withdrawal that the employer bears to the sum of the Contributions for the five Plan Years prior to the year of withdrawal for all Employers.

(g)     Except in the event of a withdrawal described in Section 8.12, the amount described in subsection (a) shall be reduced (but not below zero) by the smaller of 3/4 of 1 percent of the Plan's unfunded Vested benefits or $50,000, less the amount, if any, by which such sum in (a) exceeds $100,000.

*58*

(h)    In determining the Vested benefits of any Participant for purposes of computing Withdrawal Liability for his withdrawing Employer, the Vested benefit shall be determined as of the end of the Plan Year preceding the Employer's withdrawal increased to reflect increases in the benefit level applicable to the Participant in the year of the Employer's withdrawal and/or completion of the eligibility requirements for Retirement or a Deferred Vested Pension during the year of the Employer's withdrawal prior to the date of withdrawal.

For purposes of this Section,

(1)    Service with an Employer shall include, but not be limited to service with an entity (or entities) which the Trustees determined to be a predecessor of the Employer or with any series of such predecessors. The predecessors taken into account for this purpose shall include any employer that was treated as not withdrawing by reason of a transaction described in Sections 4204 or 4218 of ERISA. Service with an employer shall also include any Past Service which is credited to a Participant employed by such Employer, or any of such predecessors, at the start of his Covered Employment.

(2)    Whenever service with a predecessor is taken into account as service with the withdrawing Employer, Contributions and benefits by such predecessor shall be treated as Contributions and benefits of such Employer for purposes of this Article.

(3)    Subject to (1) and (2) above, a Participant's Pension Credit shall be allocated to each Employer based on the benefit accrued during the period(s) of service with that employer, based on Contribution Rates payable by that Employer.

### Section 8.07.   *Amount of Partial Withdrawal Liability.*

The amount of an employer's liability for a Partial Withdrawal under Section 8.03, before the application of Section 8.08 or 8.11(g), is equal to the product of:

(a)    the amount determined under Section 8.06 as if the employer had withdrawn in a Complete Withdrawal on the date of the Partial Withdrawal, or, in the case of a Partial Withdrawal described in Section 8.03(a)(1), on the last day of the first year in the three-year testing period, multiplied by

(b)    the fraction which is 1 minus a fraction,

(1)    the numerator of which is the number of hours for which the Employer was obligated to contribute in the year following the year of Partial Withdrawal, and

(2)    the denominator of which is the average of the number of hours for which the Employer was obligated to contribute in the five years immediately

preceding the year of Partial Withdrawal, or, in the case of a Partial Withdrawal described in Section 8.03(a)(1), in the five years immediately preceding the beginning of the three-year testing period.

### Section 8.08.  Limitations on Withdrawal Liability.

(a)    In the case of a bona fide sale of all or substantially all of the assets of an employer, other than an employer undergoing reorganization under Title 11, United States Code, or similar provisions of State law, in an arm's-length transaction to an unrelated party (within the meaning of Section 8.04(f)), the employer's liability shall not exceed an amount equal to the greater of:

   (1)    the amount described in Section 8.06(a)(1), or

   (2)    30% of the first $2,000,000 of the liquidation or dissolution value of the employer (determined after the sale or exchange of such assets), plus 35% of the next $2,000,000 plus 40% of the next $2,000,000, plus 45% of the next $1,000,000, plus 50% of the next $1,000,000, plus 60% of the next $1,000,000, plus 70% of the next $1,000,000, plus 80% of the excess over $10,000,000.

(b)    The liability of an insolvent Employer undergoing liquidation or dissolution shall not exceed an amount equal to the sum of:

   (1)    50 percent of the Employer's liability (determined without regard to this subsection), and

   (2)    that portion of 50 percent of the liability (as determined under paragraph (1)) which does not exceed the liquidation or dissolution value of the Employer (determined as of the commencement of liquidation or dissolution) after reducing such value by the amount determined under paragraph (1).

For purposes of this Section, (i) an employer is insolvent if its liabilities, including Withdrawal Liability (determined without regard to this subsection), exceed its assets (determined as of the commencement of the liquidation or dissolution), and (ii) the liquidation or dissolution value of the employer shall be determined without regard to such Withdrawal Liability.

(c)    To the extent that the liability of an Employer is attributable to his obligation to contribute as an individual (whether as a sole proprietor or as a member of a partnership), property which may be exempt from the estate under Section 522 of Title II, United States Code, or under similar provisions of law, shall not be subject to enforcement of such liability.

(d)    In the case of the withdrawal of an Employer from this Plan and from one or more other plans attributable to the same sale, liquidation, or dissolution, the Withdrawal Liability of the Employer to this Plan shall be an amount which bears the same

ratio to the present value of the Withdrawal Liability payments to all plans (after the application of the preceding provisions of this Section) as the Withdrawal Liability of the Employer to this Plan (determined without regard to the provisions of this section.

### Section 8.09.  *Withdrawal Liability, Special Rules and Definitions.*

(a)     The term "'Vested benefit" means a benefit for which a Participant has satisfied the conditions for entitlement (other than submission of an application, Retirement, or completion of a required waiting period), regardless of whether the benefit may subsequently be reduced or suspended by a Plan amendment, the occurrence of an event, or the operation of law, and regardless of whether the benefit is considered Vested or nonforfeitable for any other purpose under the Plan.

(b)     The term "obligation to contribute" means an obligation to contribute arising

     (1)     under one or more Collective Bargaining (or related) Agreements, or

     (2)     as a result of a duty under applicable labor-management relations law, but does not include an obligation to pay Withdrawal Liability or to pay delinquent Contributions.

(c)     The term "Contributions for a year" means

     (1)     with respect to any year before 1981, the Contributions as reported on line 14(c) of Form 5500 and for years before the Plan was required to file the Form 5500, the amount of total Contributions reported on any predecessor form required by the Department of Labor or the Internal Revenue Service for the Plan for the year, and

     (2)     with respect to any year after 1980, the Contributions accrued through the end of the year if received by the Plan before March 1 of the following year and not included in the Contributions for an earlier year.

Payments of Withdrawal Liability shall not be considered Contributions.

(d)     All corporations, trades, or businesses that are under common control, as defined in regulations of PBGC, shall be considered a single employer for purposes of this Article.

(e)     Withdrawal liability shall be determined on the basis of actuarial methods and assumptions adopted for this purpose by the Plan's enrolled actuary.

(f)     In determining the amount of Vested benefits, the Plan actuary may:

     (1)     rely on the most recent complete actuarial valuation of the Plan and reasonable estimates for the interim years of the unfunded Vested benefits, and

*61*

(2)    in the absence of complete data, rely on the data available or on data secured by a sampling which can reasonably be expected to be representative of the status of the entire Plan.

(g)    In the case of a transfer of liabilities to another plan incident to an employer's withdrawal, the employer's Withdrawal Liability shall be reduced in an amount equal to the value, as of the end of the year preceding the year of withdrawal, of the transferred unfunded Vested benefits.

(h)    A Withdrawal Liability of an employer for a complete or Partial Withdrawal shall be reduced by the amount of any Partial Withdrawal liability (reduced by any abatement or reduction of such liability) of the employer for a previous year.

(i)    Amounts transferred to the Plan from any other plan shall be treated as Contributions by the employer that maintained such other plan to the extent that the amounts so transferred reduced the amount of Contributions which such employer was otherwise obligated to make under this Plan, or provided additional benefits under this Plan for Participants employed by such employer, except as modified by Section 8.06(d), above.

(j)    The term "PBGC" means the Pension Benefit Guaranty Corporation.

**Section 8.10.  Notice of Withdrawal Liability.**

(a)    An employer shall, within 30 days after a written request from the Trustees, furnish such information as the Trustees reasonably determine to be necessary to enable them to comply with the provisions of this Article.

(b)    As soon as practicable after an employer's complete or Partial Withdrawal, the Trustees shall notify the employer of the amount of the liability and the schedule for liability payments.

(c)    No later than 90 days after the employer receives the notice described in subsection (b), it may:

(1)    ask the Trustees to review any specific matter relating to the determination of its liability and the schedule of payments;

(2)    identify any inaccuracy in the determination of the liability; and

(3)    furnish any additional relevant information to the Trustees.

After a reasonable review of the matter raised, the Trustees shall notify the employer of their decision, the basis for the decision, and the reason for any change in the determination of the liability or schedule of payments.

**Section 8.11.  *Payment of Withdrawal Liability.***

(a)     An employer shall pay the amount determined to be its Withdrawal Liability over the period of years necessary to amortize the amount in level annual payments, calculated as if the first payment were made on the first day of the year following the year of withdrawal and as if each subsequent payment were made on the first day of each subsequent year.

(b)     . The amount of each annual payment in the case of a Complete Withdrawal or a Partial Withdrawal under Section 8.03(a)(2) shall be the product of:

   (1)     the average annual number of contribution base units for which the employer was obligated to contribute for the 3 consecutive years during the last 10 years preceding the year of withdrawal, in which the number of hours for which the employer had an obligation to contribute was the highest, multiplied by

   (2)     the highest contribution rate at which the employer had an obligation to contribute during the 10 years ended with the year of withdrawal.

(c)     The amount of each annual payment in the case of a Partial Withdrawal under Section 8.03(a)(1) shall be the product of the amount determined under subsection (b), but with "first year of the 3-year testing period" submitted for "year of withdrawal", multiplied by the fraction determined under Section 8.07(b).

(d)     Withdrawal liability shall be payable in accordance with the schedule set forth by the Trustees beginning no later than 60 days after the demand for payment is made, notwithstanding any request for a review or appeal of the determination of the amount of such liability or of the schedule.

(e)     Each annual payment shall be payable in 12 equal installments due monthly.  If a payment is not made when due, interest on the payment shall accrue from the due date until the date on which the payment is made.

(f)     The determination of the amortization period described in subsection (a) shall be based on the interest assumption used for Section 412 of the Code (Funding Standard Account) for the year in which the withdrawal occurs.

(g)     In any case in which the amortization period exceeds 20 years, other than in the event of a withdrawal described in Section 8.12, the employer's liability shall be limited to the first 20 annual payments.

(h)     The employer shall be entitled to prepay the outstanding amount of the unpaid annual Withdrawal Liability payments, plus accrued interest, if any, in whole or in part, without penalty.  If the prepayment is made pursuant to a withdrawal which is later determined to be part of a withdrawal described in Section 8.12, the Withdrawal Liability of the employer shall not be limited to the amount of the

prepayment.

(i)    In the event of a default, the Trustees may require immediate payment of the outstanding amount of an employer's Withdrawal Liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. The term "default" means

    (1)    the failure of an employer to make, when due, any payment under this Section, if the failure is not cured within 60 days after the employer receives notification from the Trustees of such failure, and

    (2)    the occurrence of any of the following events (each of which the Trustees have determined indicates a substantial likelihood that an employer will be unable to pay its Withdrawal Liability):

        (A)    the employer's insolvency, or any assignment by the employer for the benefit of creditors, or the employer's calling of a meeting of creditors for the purpose of offering a composition or extension to such creditors, or the employer's appointment of a committee of creditors or liquidating agent, or the employer's offer of a composition or extension to creditors; or

        (B)    the employer's dissolution; or

        (C)    the making (or sending notice) of any intended bulk sale by the employer; or

        (D)    an assignment, pledge, mortgage, or hypothecation by the employer of property to an extent which the Trustees determine to be material in relation to the financial condition of the employer; or

        (E)    the filing or commencement, by the employer, or the filing or commencement against the employer or any of its property, of any proceeding, suit, or action, at law or in equity, under or relating to any bankruptcy, reorganization, arrangement-of-debt, insolvency, adjustment-of-debt, receivership, liquidation, or dissolution law or statute or amendments thereto, unless such proceeding, suit, or action is set aside, withdrawn, or dismissed within 10 days after the date of the filing or commencement; or

        (F)    the entry of any judgement or the issuance of any warrant, attachment, or injunction or government tax lien or levy against the employer or against any of its property which the Trustees determine to be material in relation to the financial condition of the employer, unless such judgement, attachment, injunction, lien, or levy is discharged, set aside or removed within 10 days after the date such judgement is entered or such attachment, injunction, lien or levy is issued; or

*64*

(G)     the failure of the employer to maintain current assets in any amount at least equal to current liabilities plus such additional amount as the Trustees may determine is appropriate in the particular circumstances, current assets and current liabilities to be determined in accordance with generally accepted accounting principles and practices consistently followed; or

(H)     default by the employer on any contractual obligation which the Trustees determine to be material in relation to the financial condition of the employer; or

(I)     such other event as the Trustees may determine indicates a substantial likelihood that the employer will be unable to pay its Withdrawal Liability, provided written notice of such determination is given to the employer with a reasonable opportunity to demonstrate to the satisfaction of the Trustees that such determination was in error.

The Trustees, from time to time, may adopt written rules of general application defining additional events which they determine indicate, alone or in combination, a substantial likelihood that an employer will be unable to pay its Withdrawal Liability.

(j)     Except as provided in subsection (f), interest under this Section shall be charged at rates based on prevailing market rates for comparable obligations.

### Section 8.12.   *Reduction of Partial Withdrawal Liability.*

(a)     (1)     If, in each of any 2 consecutive years following the year of a Partial Withdrawal under Section 8.03(a)(1), the number of hours for which the employer has an obligation to contribute is not less than 90 percent of the average number of contribution base units described in Section 8.03(a)(1), then the employer shall have no obligation to make payments for such Partial Withdrawal (other than delinquent payments) for years beginning after the second consecutive year following the year of Partial Withdrawal.

(2)     For any year in which the number of contribution base units for which an employer that has partially withdrawn under Section 8.03(a)(1) has an obligation to contribute equals or exceeds the number of contribution base units in the highest year determined under paragraph (1) without regard to "90 percent of," the employer may furnish (in lieu of payment of the Partial Withdrawal liability determined under Section 8.07) a bond to the Plan in the amount determined by the Trustees (not exceeding 50 percent of the annual payment otherwise required).

(3)     If the Trustees determine under paragraph (1) that the employer has no further liability for the Partial Withdrawal, then the bond shall be cancelled.

*65*

    (4)    If the Trustees determine under paragraph (1) that the employer continues to have liability for the Partial Withdrawal, then:

        (A)    the bond shall be paid to the Plan,

        (B)    the employer shall immediately be liable for the outstanding amount of liability due for the year for which the bond was posted; and

        (C)    the employer shall continue to make the Partial Withdrawal liability payments as they are due.

(b)    If, in each of the any two consecutive years following a Partial Withdrawal under Section 8.03(a)(1)

    (1)    the number of contribution base units for which the employer has an obligation to contribute exceeds 30 percent of the average number of contribution base units described in Section 8.03(a)(1), and

    (2)    the total number of contribution base units for which all employers had obligations to contribute is at least 90 percent of the total number of contribution base units for which all employers had obligations to contribute in the Partial Withdrawal year, then the employer shall have no obligation to make payments for such Partial Withdrawal (other than delinquent payments) for years beginning after the second such consecutive year.

### Section 8.13.  *Mass Withdrawal or Plan Termination.*

(a)    In the event every employer withdraws or substantially all employers withdraw pursuant to an agreement or arrangement to withdraw:

    (1)    the liability of each employer that has withdrawn shall be determined (or redetermined) without regard to Section 8.06(g) or Section 8.11(g); and

    (2)    notwithstanding any other provision of this Article, the total unfunded Vested benefits shall be fully and equitably allocated among all such employers.

Withdrawal by an employer, during a period of 3 years within which substantially all the employers that have an obligation to contribute withdraw, shall be presumed to be a withdrawal pursuant to an agreement or arrangement, unless the employer proves otherwise by a preponderance of evidence.

(b)    In the event of termination of the Plan, an employer's obligation to make payments under this Section shall cease at the end of the year in which the assets (exclusive of Withdrawal Liability claims) are sufficient to meet all obligations, as determined by PBGC.

*66*

**Section 8.14.  *Damages with Respect to Delinquent Contributions or Payment of Withdrawal Liability.***

(a)     If a court awards a judgment in favor of the Plan against an employer that is found delinquent in the payment of Contributions or Withdrawal Liability, the employer shall pay the Plan, in addition to amounts the court is otherwise directed to award pursuant to Section 502(g)(2) of ERISA, liquidated damages in the amount of 20 percent of the delinquency but not less than interest on such delinquency.

(b)     In determining the amount of the court judgment and the liquidated damages, interest shall be calculated at the prime rate in effect at Chase Manhattan Bank on the date of delinquency.

**Section 8.15.  *Arbitration.***

A dispute between an employer and the Trustees concerning a determination of the amount of liability or the annual payment thereon shall be submitted to arbitration as provided in Section 4221 of ERISA, to be conducted in accordance with the rules adopted by the Trustees.

**Section 8.16.  *Effective Date.***

The provisions of this Article shall apply to all withdrawals on or after September 26, 1980 but shall apply to all withdrawals during the period prior to their effective dates as reflected by the minutes of the Trustees' meeting, only if mutually agreed to by the employer and the Trustees. In the absence of such mutual agreement, liability for withdrawal during such period shall be determined in accordance with rules adopted by the Trustees, or, in the absence of such Rules, ERISA.

# Exhibit B



**THE SEGAL COMPANY**
1920 N Street, N.W., Suite 400 Washington, DC 20036-1659
T 202.833.6400 F 202.833.6490 www.segalco.com

November 10, 2003

Mr. A. H. Higgs, Jr.
Administrator
National Shopmen Pension Fund
1750 New York Avenue, NW, Suite 701
Washington, DC 20006

     **Re:   Withdrawal Liability Calculation for**
            **Rusco Steel Company**
            **Employer No. 34, SLU No. 523**

Dear Mr. Higgs:

Based on the data provided by your office dated March 31, 2003, we have calculated the withdrawal liability for the employer named above.

Since the termination of participation occurred as of January 2003, the calculations are based on factors and assumptions as of June 30, 2002, the last plan year ended before withdrawal.

The withdrawal liability in this case consists of the following:

| | | |
|---|---|---:|
| 1. | Present value of vested benefits attributable to participation by Rusco Steel Company in the National Shopmen Pension Plan | $ 2,530,711 |
| 2. | Allocated share of assets of the National Shopmen Pension Plan | (315,585)[1] |
| 3. | Unfunded vested benefits attributable to Rusco Steel Company: (1) - (2), not less than zero | $2,846,296 |
| 4. | Amount of obligation excused under the *de minimis* provision | 0 |
| 5. | Withdrawal liability payable: (3) - (4) | $2,846,296 |

---

[1] A negative allocated share of assets is the result of payments attributable to the employer in excess of contributions made by that employer.

Benefits, Compensation and HR Consulting ATLANTA BOSTON CHICAGO CLEVELAND DENVER HARTFORD HOUSTON LOS ANGELES MINNEAPOLIS
NEW ORLEANS NEW YORK PHILADELPHIA PHOENIX SAN FRANCISCO SEATTLE TORONTO WASHINGTON, DC

Multinational Group of Actuaries and Consultants AMSTERDAM BARCELONA GENEVA HAMBURG LONDON MELBOURNE MEXICO CITY OSLO PARIS

Mr. A. H. Higgs, Jr.
November 10, 2003
Page 2

Please note that for purposes of this calculation:

1.  Vesting service and benefit improvements through the withdrawal date (1/2003) are used in the determination of the present value of vested benefits.

2.  The benefit service used in the determination of the present value of vested benefits is as of June 30, 2002.

3.  Contributions made and benefits paid after June 30, 2002 have not been considered in the allocation of assets.

A statement of the assumptions used in our calculations is enclosed.

Sincerely,

Lorraine R. Bergstresser
Enrolled Actuary No. 02-5255

/vm
Attachment

165846/01684.005

**National Shopmen Pension Fund**
**Withdrawal Liability Determination for**
**Rusco Steel Company, Employer No. 34**
**(January, 2003 withdrawal)**

A.    Calculation of Attributable Assets for Employer at Market Value

    1.    Present Value of Vested Benefits for Total Plan:

        a.    PBGC rates (including expense load):         $415,087,396

        b.    Total assets at market (including withdrawal liability
           receivables):                396,944,274

    2.    Present Value of Vested Benefits for Unattributable Employers:
        (employers terminating before 7/1/2001)

        PBGC rates:                138,298,852

    3.    Present Value of Vested Benefits for Attributable Employers:

        PBGC rates:
        1(a) - 2                276,788,544

    4.    Allocation of Assets to Attributable, Unattributable Present Values:

    Let:

    $R$     = Withdrawal Liability Receivables =         4,222,020

    $A_T$   = Total Assets at market - R =         392,722,254

    $PV_T$ = Present Value Vested Benefits, Total Plan =     415,087,396

    $PV_U$ = Present Value Vested Benefits, Unattributable at
             PBGC rates =              138,298,852

    $PV_A$ = Present Value Vested Benefits, Attributable at
             PBGC rates =              276,788,544

    $A_A$   = Assets at Market, Attributable

    $A_U$   = Assets at Market, Unattributable

    Solve the following equation for $A_A$:

    $$A_A/A_T = PV_A/PV_T$$

Rusco Steel Company (January 2003 Withdrawal)
Page 2

Results:

$A_A =$                                                                 \$261,875,053

$A_U = A_T - A_A + R =$                                     135,069,221

5.  Contributions Minus Benefits with Interest through June 30, 2002:

    a.  Example of method (through 6/30/2002)

| Ending | Contributions | Benefits | C - B, i = 7.5% | |
|--------|--------------|----------|------------------|---|
| 6/30/2001 | \$3,000 | \$2,000 | \$1,000 (1 + 11/24i) (1 + i) = | \$1,112 |
| 6/30/2002 | 4,000 | 2,000 | 2,000 (1+11/24i) = | 2,069 |
| | | | Total: | \$3,181 |

    Note:   Interest rate is that used for Plan funding:

    7/1/1989 through 6/30/2002     7.5%

    b.  $(C - B)_A$ = Contributions - Benefits for Attributable Employers =     110,035,658

    c.  $(C - \overline{B})_{ER}$ = Contributions - Benefits for Rusco Steel Company =     -133,688*

    d.  Portion of Attributable Market Value of Assets Allocated to Rusco Steel Company

        $A_A \times (C - B)_{ER}/(C - B)_A =$                                        -318,166

B.  Calculation of Attributable Assets for Employer at Actuarial Value

    1.  Present Value of Vested Benefits for Total Plan:

        a.  Valuation rates:                                                       \$372,642,864

        b.  Total assets at actuarial value (including withdrawal liability
            receivables):                                                          397,922,540

    2.  Present Value of Vested Benefits for Unattributable Employers:
        (employers terminating before 7/1/2001)

            Valuation rates:                                                       126,785,177

---

*   The negative amount indicates that benefits paid, accumulated with interest, exceeded contributions,
    also accumulated with interest, made by the employer.

Rusco Steel Company (January 2003 Withd___ __l)
Page 3

3.    Present Value of Vested Benefits for Attributable Employers:

      Valuation rates:
      1(a) - 2                                          245,857,687

4.    Allocation of Assets to Attributable, Unattributable Present Values:

      Let:

      $R$       = Withdrawal Liability Receivables =            4,222,020

      $A_T$    = Total Assets at Actuarial value - R =         393,700,520

      $PV_T$ = Present Value Vested Benefits, Total Plan at
              Valuation rates =                             372,642,864

      $PV_U$ = Present Value Vested Benefits, Unattributable at
              Valuation rates =                             126,785,177

      $PV_A$ = Present Value Vested Benefits, Attributable at
              Valuation rates =                             245,857,687

      $A_A$    = Assets at Valuation rates, Attributable

      $A_U$    = Assets at Valuation rates, Unattributable

      Solve the following equation for $A_A$:

      $A_A/A_T = PV_A/PV_T$

      Results:

      $A_A$ =                                     259,751,005

      $A_U = A_T - A_A + R$ =                      138,171,535

5.    Contributions Minus Benefits with Interest through June 30, 2002:

      a.    $(C - B)_A$ = Contributions - Benefits for Attributable Employers =    110,035,658

      b.    $(C - B)_{ER}$ = Contributions - Benefits for Rusco Steel Company =    -133,688

      c.    Portion of Attributable Actuarial Value of Assets Allocated to
          Rusco Steel Company:

          $A_A$ x $(C - B)_{ER}/(C - B)_A$ =                  -315,585

Rusco Steel Company (January 2003 Withdrawal)
Page 4

C.     Attributable Liability for Rusco Steel Company

    1.     Present Value of Vested Benefits Attributable to Employer:

       a.     Valuation rates:                            2,530,711

       b.     PBGC rates (including expense load):            2,777,477

    2.     Assets Attributable to Employer:

       a.     Actuarial Value:                            -315,585

       b.     Market Value:                             -318,166

    3.     Employer Nonforfeitable Benefits:

       a.     Valuation Rates:                            2,530,711

       b.     PBGC Rates = (2b) + [1 − (2b)/(1b)] x (1a), if (1b) > (2b)

                                        and (2b) > 0;

                 = (1a), otherwise                   2,530,711

    4.     Unfunded Employer Nonforfeitable Benefits:

       a.     Valuation Rates = (3a) − (2a) =               2,846,296

       b.     PBGC Rates = (3b) − (2b) =                  2,848,877

D.     Employer's Share of Unattributable Nonforfeitable Benefits:

    1.     Unattributable Present Value of Vested Benefits:

       a.     Valuation rates:                           126,785,177

       b.     PBGC rates (including expense load):        138,298,852

    2.     Unattributable Assets (not including withdrawal liability receivables):

       a.     Actuarial Value:                           133,949,515

       b.     Market Value:                           130,847,201

    3.     Unattributable Nonforfeitable Benefits:

       a.     Valuation Rates:                         126,785,177

       b.     PBGC Rates = (2b) + [1 − (2b)/(1b)] x (1a), if (1b) > (2b)

                 = (1a), otherwise               137,678,486

Rusco Steel Company (January 2003 Withd␣␣␣al)
Page 5

    4.   Unfunded Unattributable Nonforfeitable Benefits:

        a.    Valuation Rates = (3a) − (2a) − R, not less than zero =        -0-

        b.    PBGC Rates = (3b) − (2b) − R, not less than zero =        2,609,237

        c.    Lesser of (a) and (b):        -0-

    5.   Employer's share of (4c):        -0-

E.    Employer's Withdrawal Liability before Deductible:
        (lesser of C(4a) and C(4b)) + D(5)        2,846,296

F.    Amount of Deductible:

    1.   Unfunded Present Value of Nonforfeitable
        Vested Benefits for Total Plan:        -0-

    2.   Amount of Deductible:
        $0, since F(1) is $0        -0-

G.    Employer's Withdrawal Liability after Deductible:
        E − F(2)        $2,846,296

cc:   Fund Administrator
       William A. Rivers
       Richard Berger

## ACTUARIAL ASSUMPTIONS FOR
## NATIONAL SHOPMEN PENSION FUND
## WITHDRAWAL LIABILITY

Determination of the value of vested benefits has to be based on a set of actuarial assumptions. The law prescribes that the assumptions and methods used must be reasonable in the aggregate. It also authorizes the Pension Benefit Guaranty Corporation (PBGC) to promulgate other assumptions and methods for use by the Plan's actuary. However, the PBGC has not yet promulgated withdrawal liability assumptions, except in the event of plan termination by mass withdrawal.

The withdrawal liability calculations are based on the same actuarial assumptions and asset value as applied in the actuarial valuation for Plan funding, with no expense loading.

1.     Valuation Investment Return:  7.50%

2.     Expenses

      Allowance by discount implicit in investment return rate assumed.

3.     Mortality

      1983 Group Annuity Mortality Table for healthy lives;
      1983 Railroad Retirement Board Disabled Annuitants Table for disabled lives.

4.     Retirement Age

      For asset allocations and plan-wide withdrawal liability present value determination:

           From active service -- Age 59, or completion of service requirement, if later.

           From inactive vested status -- Either first age eligible for an unreduced pension or 55 if eligible for less than 6% per year early retirement reduction.

      For individual withdrawal liability present value determinations:

           From inactive vested status -- First age eligible for an unreduced pension or 55 if eligible for less than 6% per year early retirement reduction.

5.     Actuarial Value of Assets

      Sum of actuarial value at beginning of year and increase in cost value during year excluding realized capital gains or losses plus 20% of market value at end of year in excess of that sum, plus additional adjustment as necessary so that final actuarial value is within 20% of market value. Assets do not include withdrawal liability receivables.

# ⋆SEGAL

**THE SEGAL COMPANY**
1920 N Street, N.W., Suite 400  Washington, DC 20036-1659
T 202.833.6400  F 202.833.6490  www.segalco.com

September 16, 2003

Mr. A. H. Higgs, Jr.
Administrator
National Shopmen Pension Fund
1750 New York Avenue, N.W., Suite 701
Washington, DC  20006

Re:    National Shopmen Pension Fund
         Calculation of Withdrawal Liability as of June 30, 2002

Dear Mr. Higgs:

Based on the data provided by your office for the July 1, 2002 valuation and subsequent information provided by the fund office, we have calculated the withdrawal liability for the plan, including that portion of the liability and assets that can be assigned to employers with an obligation to contribute to the plan in the plan year ending June 30, 2002.

The plan-wide calculation of withdrawal liability will be used to calculate the withdrawal liability for any individual employer who withdraws between July 1, 2002 and June 30, 2003.  A calculation of an individual withdrawal liability would also require the contributions, benefit payments, and other individual data associated with that employer.

The total plan assets exceed the total present value of vested benefits; therefore, there is no plan-wide withdrawal liability.

A statement of the assumptions used in our calculations is attached.

Please do not hesitate to contact us if you have any questions.

Sincerely yours,

*Lorraine R. Bergstresser*

Lorraine R. Bergstresser
Enrolled Actuary No. 02-5255

/cmc
**Attachment**

164968/01684.004

Benefits. Compensation and HR Consulting  ATLANTA  BOSTON  CHICAGO  CLEVELAND  DENVER  HARTFORD  HOUSTON  LOS ANGELES  MINNEAPOLIS
NEW ORLEANS  NEW YORK  PHILADELPHIA  PHOENIX  SAN FRANCISCO  SEATTLE  TORONTO  WASHINGTON, DC

Multinational Group of Actuaries and Consultants  AMSTERDAM  BARCELONA  GENEVA  HAMBURG  LONDON  MELBOURNE  MEXICO CITY  OSLO  PARIS

## PLAN-WIDE WITHDRAWAL LIABILITY DETERMINATION FOR
## NATIONAL SHOPMEN PENSION FUND

Here is a summary of the total plan unfunded vested benefits and assets for withdrawal liability purposes as of June 30, 2002. A statement of actuarial assumptions is attached. The result below does not imply, however, that a withdrawing employer will not be assessed withdrawal liability since the National Shopmen Pension Fund uses the Direct Attribution method of computing withdrawal liability.

**Withdrawal Liability Determination**

1.  Present value of vested benefits

| | Number | Valuation Basis | PBGC Basis |
|---|---|---|---|
| Actives (vested only) | 2,970 | $ 142,091,416 | $160,688,580 |
| Termination vesteds | 4,394 | 59,949,480 | 68,026,744 |
| Pensioners | 4,133 | 154,029,628 | 162,583,311 |
| Beneficiaries | 926 | 16,572,340 | 17,534,734 |
| Total | 12,423 | $372,642,864 | $408,833,369 |

2.  Expense load[1]                                                  6,254,027

3.  Present value of vested benefits

    a. Valuation Basis                                       372,642,864
    b. PBGC Basis                                            415,087,396

4.  Assets at market value[2]                                        392,722,254

5.  Total plan present value of vested benefits for withdrawal liability
    on PBGC Basis:
    If (3b) > (4), [1-[(4)/(3b)]] x (3a) + (4)]
    If (3b) ≤ (4), (3b)                                      412,800,461

6.  Unfunded present value of vested benefits on PBGC Basis:
    (5) - (4), not less than zero                            20,078,207

7.  Assets at actuarial value[2]                                     393,700,520

8.  Total plan present value of vested benefits for withdrawal liability
    on Valuation Basis                                       372,642,864

9.  Unfunded present value of vested benefits on Valuation Basis:
    (8) - (7), not less than zero                            -0-

10. Plan-wide withdrawal liability: lesser of (6) and (9)            -0-

---

[1]  Operating expenses: Allowance by discount implicit in investment return rates assumed for the valuation basis; $10,000 plus $200 per vested participant plus a percentage of the present value of vested benefits in excess of $200,000 (with the percentage based on the adjusted PBGC promulgated select interest rate) for the PBGC basis.

[2]  Not including withdrawal liability receivables.

# CTUARIAL ASSUMPTIONS FOR
## N. IONAL SHOPMEN PENSION FUND
### WITHDRAWAL LIABILITY

## VALUATION BASIS

Determination of the value of vested benefits has to be based on a set of actuarial assumptions. The law prescribes that the assumptions and methods used must be reasonable in the aggregate. It also authorizes the Pension Benefit Guaranty Corporation (PBGC) to promulgate other assumptions and methods for use by the Plan's actuary. However, the PBGC has not yet promulgated withdrawal liability assumptions, except in the event of plan termination by mass withdrawal.

As of June 30, 2002, the withdrawal liability calculations are based on the same actuarial assumptions and asset value as applied in the actuarial valuation for Plan funding, with no expense loading.

1.    Valuation Investment Return:  7.50%

2.    Expenses

      Allowance by discount implicit in investment return rate assumed.

3.    Mortality

      1983 Group Annuity Mortality Table for healthy lives;
      1983 Railroad Retirement Board Disabled Annuitants Table for disabled lives.

4.    Retirement Age

      For asset allocations and plan-wide withdrawal liability present value determination:

            From active service -- Age 59, or completion of service requirement, if later.

            From inactive vested status -- Either first age eligible for an unreduced pension or 55
                                           if eligible for less than 6% per year early retirement
                                           reduction.

      For individual withdrawal liability present value determinations:

            From inactive vested status -- First age eligible for an unreduced pension or 55 if
                                           eligible for less than 6% per year early retirement
                                           reduction.

5.    Actuarial Value of Assets

      Sum of actuarial value at beginning of year and increase in cost value during year excluding
      realized capital gains or losses plus 20% of market value at end of year in excess of that sum,
      plus additional adjustment as necessary so that final actuarial value is within 20% of market
      value. Assets do not include withdrawal liability receivables.

## ACTUARIAL ASSUMPTIONS FO.
## NATIONAL SHOPMEN PENSION FUND
## WITHDRAWAL LIABILITY

### PBGC BASIS

In the absence of PBGC assumptions, the Trustees are using the Fund's actuary's "best estimate" assumptions, as follows:

1.  Investment Return

    (a)  To the extent benefits are matched by the market value of plan assets on hand, vested benefits are valued on interest assumptions prescribed by the Pension Benefit Guaranty Corporation under 29 C.F.R. Part 4044 that are in effect for the applicable withdrawal liability valuation date plus 1.00%. The rates are as follows:

    |  | As of June 30, 2002 |
    | --- | --- |
    | Interest rate for first 25 years | 6.70% |
    | Interest rate for subsequent years | 5.25% |

    (b)  The portion of the vested benefits that is not matched by plan assets is valued on the interest assumption used for plan funding as of the applicable withdrawal liability valuation date. As of June 30, 2002, this rate was 7.50%.

    (c)  The portion of the vested benefits that is matched by assets will be determined by comparing the total present value of benefits - at PBGC rates plus 1.00% - with the total market value of assets; each vested benefit will be treated as covered by assets to the same extent as all other vested benefits.

2.  Mortality

    1983 Group Annuity Mortality Table for healthy lives;
    1983 Railroad Retirement Board Disabled Annuitants Table for disabled lives.

3.  Expenses

    Calculated as prescribed by PBGC formula (PBGC Reg. Part 4044, Appendix C)

4.  Retirement Age

    For asset allocations and plan-wide withdrawal liability present value determination

    From active service -- Age 59, or completion of service requirement, if later.

    From inactive vested status --      Either first age eligible for an unreduced pension or 55 if eligible for less than 6% per year early retirement reduction.

    For individual withdrawal liability present value determinations

    From inactive vested status --      Either first age eligible for an unreduced pension or 55 if eligible for less than 6% per year early retirement reduction.

5.  Assets

    Valued at fair market value as reported in the Plan's audited financial statements without withdrawal liability receivables.

164968/01684.004

# NATIONAL SHOPMEN PENSION FUND
## W/L ASSET ALLOCATION FOR
### Rusco Steel Company

| YEAR END 6/30 | MONTHS IN YEAR | CONTRIBUTIONS | LUMP SUMS | BENEFIT PAYMENTS | AVG ASSET VALUE | ANNUAL YIELD | INVESTMENT INCOME | ASSET VALUE END OF YEAR |
|---|---|---|---|---|---|---|---|---|
| 1969 | 2 | 867.55 | | | 217 | 4.00% | 1 | 869 |
| 1970 | 12 | 7,176.26 | | | 4,158 | 4.00% | 166 | 8,212 |
| 1971 | 12 | 7,055.24 | | | 11,445 | 4.00% | 458 | 15,725 |
| 1972 | 12 | 7,074.24 | | | 18,967 | 4.50% | 854 | 23,652 |
| 1973 | 12 | 6,152.23 | | | 26,472 | 4.50% | 1,191 | 30,996 |
| 1974 | 12 | 8,634.68 | | | 34,963 | 4.50% | 1,573 | 41,203 |
| 1975 | 12 | 8,485.74 | | | 45,093 | 4.50% | 2,029 | 51,718 |
| 1976 | 12 | 6,372.72 | | 2,076.00 | 53,688 | 5.00% | 2,684 | 58,699 |
| 1977 | 12 | 6,445.61 | | 4,860.00 | 59,426 | 5.00% | 2,971 | 63,256 |
| 1978 | 12 | 6,123.92 | | 4,860.00 | 63,836 | 5.00% | 3,192 | 67,712 |
| 1979 | 12 | 9,090.06 | | 4,860.00 | 69,651 | 5.00% | 3,483 | 75,425 |
| 1980 | 12 | 10,218.24 | | 4,860.00 | 77,881 | 5.00% | 3,894 | 84,677 |
| 1981 | 12 | 9,136.10 | 1,587.99 | 5,838.00 | 85,461 | 6.00% | 5,128 | 91,515 |
| 1982 | 12 | 12,837.80 | | 6,816.00 | 94,275 | 6.00% | 5,656 | 103,193 |
| 1983 | 12 | 10,085.70 | | 5,922.00 | 105,101 | 6.00% | 6,306 | 113,663 |
| 1984 | 12 | 11,854.58 | | 5,028.00 | 116,792 | 6.00% | 7,008 | 127,497 |
| 1985 | 12 | 12,002.90 | | 5,028.00 | 130,694 | 6.00% | 7,842 | 142,313 |
| 1986 | 12 | 16,579.50 | | 12,652.00 | 144,113 | 6.50% | 9,367 | 155,608 |
| 1987 | 12 | 19,822.19 | | 13,542.00 | 158,487 | 6.50% | 10,302 | 172,190 |
| 1988 | 12 | 17,757.75 | | 22,947.50 | 169,811 | 6.50% | 11,038 | 178,038 |
| 1989 | 12 | 19,287.59 | | 26,142.00 | 174,896 | 7.00% | 12,243 | 183,426 |
| 1990 | 12 | 15,956.15 | | 28,452.00 | 177,699 | 7.00% | 13,327 | 184,258 |
| 1991 | 12 | 18,379.20 | | 28,452.00 | 179,641 | 7.50% | 13,473 | 187,658 |
| 1992 | 12 | 18,296.15 | | 28,800.00 | 182,844 | 7.50% | 13,713 | 190,868 |
| 1993 | 12 | 21,064.90 | | 28,800.00 | 187,322 | 7.50% | 14,049 | 197,182 |
| 1994 | 12 | 19,073.20 | | 29,765.50 | 192,281 | 7.50% | 14,421 | 200,911 |
| 1995 | 12 | 21,299.85 | | 36,135.00 | 194,111 | 7.50% | 14,558 | 200,634 |
| 1996 | 12 | 20,778.70 | 6,021.80 | 64,638.50 | 177,771 | 7.50% | 13,333 | 164,085 |
| 1997 | 12 | 21,468.90 | | 77,994.00 | 138,178 | 7.50% | 10,363 | 117,923 |
| 1998 | 12 | 33,843.90 | | 80,901.00 | 96,355 | 7.50% | 7,227 | 78,093 |
| 1999 | 12 | 34,715.00 | 2,520.00 | 90,423.00 | 51,405 | 7.50% | 3,855 | 23,720 |
| 2000 | 12 | 61,807.25 | | 103,449.00 | 4,634 | 7.50% | 348 | -17,574 |
| 2001 | 12 | 56,116.90 | | 99,534.00 | -37,474 | 7.50% | -2,811 | -63,802 |
| 2002 | 12 | 43,499.20 | | 106,437.00 | -92,648 | 7.50% | -6,949 | -133,688 |
| TOTALS | | 599,359.90 | 10,129.79 | 929,212.50 | 3,097,537.25 | | 206,294.30 | -133,688 |



# National Shopmen Pension Fund

Suite 701 • 1750 New York Avenue, N.W.  Washington, D.C. 20006-5301
Telephone No: (202) 383-4874 • Fax No. (202) 628-6469



March 31, 2003

Lorraine Bergstresser
The Segal Company
1920 N Street, NW – Suite 500
Washington, DC  20036

Re:  Rusco Steel Company – Employer No. 34, SLU No. 523

Dear Lorraine:

Enclosed please find a copy of the pertinent data concerning the above named withdrawn employer along with a diskette containing the information regarding the pensioners and beneficiaries of this employer.

Please calculate whether or not a withdrawal liability exists for this employer so that we may inform the employer of its possible withdrawal liability.

Should you have any questions or need additional information, do not hesitate to contact this office.

Sincerely,

A.H. Higgs, Jr.
Adaminstrator

AHH/jw
enclosures

Document #: 5227

RUN DATE:  3/26/03

ACTUARIAL REVIEW OF WITHDRAWN EMPLOYER

EMPLOYER NAME:         RUSCO STEEL COMPANY

EMPLOYER NUMBER:       10-00034        SLU NUMBER:        523

EMPLOYER CONTRIBUTION DATE: 1969/05

EMPLOYER WITHDRAWAL DATE:   2003/01

----- RATES -----

| Period | Rate | Period | Rate |
|--------|------|--------|------|
| 2002/05/18 | 2.75 | 1985/05/18 | .60 |
| 2001/05/18 | 2.45 | 1984/05/18 | .55 |
| 2000/05/18 | 2.15 | 1983/05/18 | .50 |
| 1999/05/18 | 1.85 | 1981/05/18 | .40 |
| 1998/05/18 | 1.75 | 1981/01/01 | .35 |
| 1997/05/18 | 1.55 | 1980/01/01 | .30 |
| 1996/05/18 | 1.35 | 1979/01/01 | .25 |
| 1995/05/18 | 1.15 | 1973/05/18 | .20 |
| 1994/05/18 | 1.05 | 1972/05/18 | .15 |
| 1993/05/18 | 1.00 | 1969/05/18 | .10 |
| 1992/05/18 | .90 | | |
| 1991/05/18 | .85 | | |
| 1989/05/18 | .70 | | |
| 1988/05/18 | .70 | | |
| 1986/05/18 | .65 | | |

## RUSCO STEEL COMPANY

### Contributions

| last report 2003/01 | | | | | |
|---|---|---|---|---|---|
| 03/06 | $ | 21,356.50 | | | |
| 02/06 | $ | 43,499.20 | | | |
| 01/06 | $ | 56,116.90 | | | |
| 00/06 | $ | 61,807.25 | | | |
| 99/06 | $ | 34,715.00 | | | |
| 98/06 | $ | 33,843.90 | | | |
| 97/06 | $ | 21,468.90 | | | |
| 96/06 | $ | 20,778.70 | 89/06 | $ | 19,287.59 |
| 95/06 | $ | 21,299.85 | 88/06 | $ | 17,757.75 |
| 94/06 | $ | 19,073.20 | 87/06 | $ | 19,822.19 |
| 93/06 | $ | 21,064.90 | 86/06 | $ | 16,579.50 |
| 92/06 | $ | 18,296.15 | 85/06 | $ | 12,002.90 |
| 91/06 | $ | 18,379.20 | 84/06 | $ | 11,854.58 |
| 90/06 | $ | 15,956.15 | 83/06 | $ | 10,085.70 |
| | | | 82/06 | $ | 12,837.80 |
| | | | 81/06 | $ | 9,136.10 |
| | | | 80/06 | $ | 10,218.24 |
| | | | 79/06 | $ | 9,090.06 |
| | | | 78/06 | $ | 6,123.92 |
| | | | 77/06 | $ | 6,445.61 |
| | | | 76/06 | $ | 6,372.72 |
| | | | 75/06 | $ | 8,485.74 |
| | | | 74/06 | $ | 8,634.68 |
| | | | 73/06 | $ | 6,152.23 |
| | | | 72/06 | $ | 7,074.24 |
| | | | 71/06 | $ | 7,055.24 |
| | | | 70/06 | $ | 7,176.26 |
| | | | 69/06 | $ | 867.55 |

**TOTAL**    **$620,716.40**

ACTUARIAL REVIEW OF WITHDRAWN EMPLOYER

RUN DATE: 3/26/03     PAGE 1

EMPLOYER NAME: RUSCO STEEL COMPANY
EMPLOYER NUMBER: 10-00034     SIU NUMBER: 523

_Handwritten note across CONTRIB column:_ death benefit pd - $1,201.80 9/95

| NAME | SOC SEC NBR | DATE OF BIRTH | DATE OF HIRE | PST SRV | FUTURE SERV 6/2 | SERV 1 2003 | VESTING SERV 6/2 | SERV 1 2003 | CONTRIB | LAST CONTR | VESTED 6/2 | BENEFIT 1/200 | DEAD BEN | SEV BEN | SEX |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COLON, RAMON L | 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 | 1972/11/23 | 1999/09/01 | | 2.60 | 2.60 | 2.00 | 2.00 | 9724.10 | 2001/12 | | | | | |
| DIOGO, ADELINO A | 24-48-8827 | 1958/12/17 | 1957/04/06 | | 15.40 | 15.90 | 16.00 | 16.00 | | 2003/01 | 1961.96 | 2273.70 | Y | | M |
| DOMINGUEZ, JORGE L | 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 | 1965/12/10 | 1999/10/01 | | 1.40 | 1.40 | 1.00 | 1.00 | 4526.05 | 2000/12 | | | Y | | M |
| FALCO, NICHOLAS D | 37-07-0199 | 1919/02/14 | 1948/09/07 | 22 | 10.90 | 10.90 | 12.00 | 12.00 | | 1980/12 | | | | | M |
| GRAZIANO, ENRICO A | 35-01-9010 | 1911/06/16 | 1969/05/18 | 27 | 6.60 | 6.60 | 7.00 | 7.00 | | 1976/06 | | | | Y | M |
| GRENON, CHRISTOPHER | 37-48-7576 | 1977/02/14 | 1999/04/01 | | 2.90 | 2.90 | 3.00 | 3.00 | | 2001/12 | | | | Y | M |
| GRENON, JOSEPH J | 37-48-7557 | 1970/03/07 | 1988/10/31 | | 7.50 | 8.00 | 7.00 | 7.00 | 12309.70 | 2001/12 | | | Y | | |
| HUNDLEY, WILLIAM H | 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 | 1930/08/17 | 1956/07/07 | 14 | 17.70 | 17.70 | 19.00 | 19.00 | | 2003/01 | 955.50 | 1144.00 | Y | | M |
| LAUTIERI, SILVIO A | 37-10-7634 | 1911/09/10 | 1944/07/11 | 26 | 5.60 | 5.60 | 6.00 | 6.00 | | 1987/12 | | | | Y | M |
| LUPO, ANTONIO | 36-12-8991 | 1923/06/06 | 1957/09/01 | 10 | 15.70 | 15.70 | 17.00 | 17.00 | | 1975/06 | | | | Y | M |
| MARIORENZI, ANTHONY | 38-14-9482 | 1926/08/09 | 1970/08/11 | | 14.00 | 14.00 | 13.00 | 13.00 | | 1985/12 | | | | Y | M |
| MEDEIROS, LIBERIO S | 23-46-2231 | 1954/11/13 | 1988/04/07 | | 4.60 | 4.60 | 4.00 | 4.00 | | 1993/09 | | | | Y | M |
| MELLO, DANIEL A | 37-16-4613 | 1925/10/09 | 1970/08/11 | | 16.60 | 16.60 | 15.00 | 15.00 | | 1987/09 | | | | Y | M |
| MORETTI, JOHN A | 38-34-4171 | 1951/10/09 | 1986/05/01 | | 7.90 | 8.40 | 7.00 | 8.00 | | 2003/01 | 1006.46 | 1201.20 | Y | | M |
| MOTTA, JOSEPH G | 38-20-9951 | 1932/02/22 | 1973/06/06 | | 19.30 | 19.30 | 20.00 | 20.00 | | 1995/01 | | | | Y | M |
| PACHECO JR, ANGEL L | 37-46-2831 | 1971/10/28 | 1990/07/01 | | 4.60 | 4.60 | 5.00 | 5.00 | | 2002/11 | 514.28 | 514.28 | Y | | M |
| PACHECO, ANGEL L | 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 | 1951/02/16 | 1985/05/01 | | 17.20 | 17.60 | 18.00 | 18.00 | | 2003/01 | 2191.28 | 2516.80 | Y | | M |
| PARENTEAU, RICHARD | 36-26-3167 | 1942/07/19 | 1965/09/01 | 5 | 32.70 | 33.20 | 34.00 | 34.00 | | 2003/01 | 4802.98 | 5462.60 | Y | | M |
| PETRARCA, ALBERT E | 36-22-7740 | 1932/02/06 | 1957/09/01 | 13 | 17.90 | 17.90 | 19.00 | 19.00 | | 1988/10 | | | | | M |
| PETRARCA, JOHN F | 36-18-4241 | 1923/05/29 | 1965/09/15 | 4 | 15.90 | 15.90 | 17.00 | 17.00 | | 1985/12 | | | | Y | M |
| PETRARCA, MARIO | 38-03-4113 | 1911/04/16 | 1956/09/01 | 14 | 6.00 | 6.00 | 7.00 | 7.00 | | 1976/01 | | | | | Y |
| RODOLEWICZ, RICHARD | 37-30-8370 | 1947/03/25 | 1966/09/16 | | 33.20 | 33.20 | 33.00 | 33.00 | | 2002/06 | | | | Y | M |
| RUZZO JR, HORACE P | 39-24-7799 | 1937/02/14 | 1967/09/21 | 3 | 29.30 | 29.30 | 30.00 | 30.00 | | 1999/02 | | | | Y | M |

ACTUARIAL REVIEW OF WITHDRAWN EMPLOYER

RUN DATE:  3/26/03

PAGE  2

EMPLOYER NAME:  RUSCO STEEL COMPANY

EMPLOYER NUMBER:  10-00034    SLU NUMBER:  523

| NAME | SOC SEC NBR | DATE OF BIRTH | DATE OF HIRE | PST SRV | FUTURE SERV 6 | 1 2 2003 | VESTING SERV 6 | 1 2 2003 | CONTRIB | LAST CONTR | VESTED 6 2 | BENEFIT 1 2003 | DEAD BEN | SEV BEN | S RE X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RUZZO, ANGELO | 35-24-0737 | 1933/12/26 | 1966/04/22 | 4 | 25.70 | 25.70 | 27.00 | 27.00 | | 1996/01 | | | | | Y M |
| SANTILLI, ANGELO | 36-14-2952 | 1922/08/04 | 1952/09/10 | 17 | 18.00 | 18.00 | 19.00 | 19.00 | | 1987/09 | | | | | Y M |
| SENERCHIA, RALPH G | 35-24-7207 | 1934/07/09 | 1946/07/02 | 15 | 25.40 | 25.40 | 26.00 | 26.00 | | 1995/04 | | | | | Y M |
| VENTURA, STEPHEN A | 39-34-0131 | 1952/01/28 | 1986/08/11 | | 15.20 | 15.70 | 16.00 | 16.00 | | 2003/01 | 1936.48 | 2245.10 | Y | | M |
| WETZEL, WILLIAM | 39-38-1355 | | 1974/08/01 | | 4.90 | 4.90 | 3.00 | 3.00 | 3.00 | *death were got 3/81 - #1,58/99* | | | | | M |

# Exhibit C

# National Shopmen Pension Fund

Suite 400  •  1750 New York Avenue, N.W.  Washington, D.C. 20006-5301
Telephone No: (202) 383-4874  •  Fax No. (202) 628-6469

150.182

February 27, 2004



Rusco Steel Company
25 Bleachery Court
Warwick, RI  02886

Re:  Withdrawal Liability Determination and Demand for Payment:  Employer No. 34, SLU No. 523

Dear Sir or Madam:

The Trustees of the National Shopmen Pension Fund (hereafter "Fund") hereby notify you of Rusco Steel Company's withdrawal liability to the Fund and demand payment thereof.  The Fund's records indicate that Rusco Steel Company withdrew from the Fund as of January 2003.

The Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, requires that withdrawal liability be assessed against contributing employers who withdraw from the Fund after September 26, 1980 (29 U.S.C. Section 1381).  Withdrawal liability is determined by allocating a portion of the Fund's unfunded vested benefits ("UVBs") to the withdrawing employer pursuant to one of the methods authorized by ERISA. The method adopted by the Trustees of the Fund is the "attributable rule".  A withdrawn employer's liability under the attributable rule is the sum of:  (1)  the difference between the UVBs of its employees and its allocated share of the Fund's assets; and (2)  a proportional share of the Fund's UVBs that are not allocated to any contributing employer.  The Trustees of the Fund have directed the Fund's actuaries, The Segal Company, to calculate Rusco Steel Company's withdrawal liability.  The amount of the liability has been determined to be $5,397,100.  A copy of their assumptions used in this calculation is enclosed.

ERISA requires the Trustees to establish a schedule for the payment of withdrawal liability.  Annual payments are based on a statutory formula and are to be paid in equal monthly installments (with interest at an annual rate of 7.5%) over a period of years necessary to amortize the liability.  Rusco Steel Company's repayment schedule, therefore, is as follows:  Employer is to pay $5,773.00 per month for 240 months.  The Fund hereby demands that you begin payment in accordance with the schedule no later than March 29, 2004. This repayment schedule will result in a total payment of only $1,385,520.00 of the full withdrawal liability. ERISA Section 4219 (c)(1)(B) limits the liability of the company to a twenty-year repayment plan. Accordingly, your company is not obligated to pay the full amount of the liability.  You may, if you wish, pay the entire amount due, without penalty.  Payments must be made notwithstanding any request for review of the withdrawal liability.

Document #: 19384

Rusco Steel Company
February 27, 2004
Page 2

A withdrawn employer may, no later than 90 days after receipt of this letter, request a review of the determination, identify any inaccuracy in the Fund's determination of withdrawal liability which may exist, or furnish additional relevant information.

This letter constitutes notice of the withdrawal liability to Rusco Steel Company and all groups of trades or businesses under common control or common ownership with Rusco Steel Company. The Fund hereby demands that you provide within 30 days the names, addresses, and officer names of any and all corporations, companies or entities within the common control group of Rusco Steel Company or under common ownership of the stockholders of Rusco Steel Company. Rusco Steel Company is required to provide this information to the Fund within 30 days by 29 U.S.C. Section 1399.

If the Fund is required to bring suit to collect withdrawal liability, the withdrawn employer also becomes liable for interest, liquidated damages (in the amount of 20% of the amount due), and all costs of collection, including attorneys' fees.

We trust that payments will begin as scheduled. If you have any questions about this matter, do not hesitate to contact the Fund Office.

Sincerely,

A.H. Higgs, Jr.
Administrator

AHH/jw
enclosure
cc: Marc Rifkind, Fund Counsel ✓
    SLU #523

Document #: 19384

# Exhibit D

#34

# SLEVIN & HART, P.C.

**Attorneys at Law**
1625 Massachusetts Avenue, NW, Suite 450
Washington, DC 20036
202/797-8700
FAX: 202/234-8231



MARC RIFKIND
Member of the Firm

Writer's Direct Dial: (202) 797-2203
Mrifkind@slevinhart.com

February 15, 2005

## *VIA FIRST CLASS U.S. MAIL, CERTIFIED, RETURN-RECEIPT REQUESTED*

Robert S. Russell, President
Rusco Steel Company
P.O. Box 7630
Warwick, RI 02887

Robert S. Russell, President
Rusco Steel Company
25 Bleachery Court
P.O. Box 7630
Warwick, RI 02887

**Re:    Rusco Steel Company's Withdrawal Liability to National Shopmen
Pension Fund – Delinquent Payments**

Dear Mr. Russell:

The National Shopmen Pension Fund ("Fund") has referred to us the above-referenced matter of the nonpayment by Rusco Steel Company ("Rusco"). The Fund office has notified Rusco of the amount of the Fund's assessment of Rusco's withdrawal liability to the Fund, and also included information for Rusco's scheduled payment thereof to the Fund. Pursuant thereto, Rusco was to pay monthly installments of $5,773.00 to the Fund. To date, the Fund has only received payments for the period up until September 2004, and Rusco owes its November 2004 through February 2005 installments.

Therefore, you must send to the Fund Rusco's payment in the amount of $23, 092.00 for the above referenced installments. Alternatively, Rusco may pay in lump-sum the $1,345,389.00 total amount due the Fund per the withdrawal liability assessment payment schedule. If the Fund does not receive payment for Rusco's delinquent withdrawal liability installments within 60 days of the date of this letter the Fund will file suit against Rusco in Federal Court. Once such a lawsuit has commenced, under ERISA, Rusco will be liable not only for the full amount of the assessment, but also for interest accrued thereon, and liquidated damages in the amount of 20% of the principal due, as well as all attorneys' fees and costs in collection of those amounts.

Robert S. Russell, President
February 15, 2005
Page 2

     We appreciate your anticipated prompt response to this request; if you have any questions regarding this matter, please call me at the telephone number listed above.

Sincerely,

Marc Rifkind

MR:rag:150.182

cc:    A.H. Higgs, Jr.

H:\Users\RAG\150\DemandLtrRusco.wpd

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL SHOPMEN PENSION FUND, AND ITS BOARD OF TRUSTEES )<br><br>Plaintiffs, )<br><br>v. )<br><br>RUSCO STEEL COMPANY, *et al.* )<br><br>Defendants. ) | Civil Action No. 07-cv-110 |

## DECLARATION OF MARC H. RIFKIND

CITY OF WASHINGTON )
                                    ) ss:
DISTRICT OF COLUMBIA )

Marc H. Rifkind deposes and says:

1.    I am the attorney for Plaintiffs in the above-entitled action.  I make this affidavit in support of the request for attorneys' fees and costs contained in Plaintiffs' Motion for Default Judgment.

2.    I am a principle in the firm of Slevin & Hart, P.C. with over twenty years in the practice.  In addition, I have been assisted by, Bruce Perlin, an associate formerly with the firm, Marjorie Margolis and Sherry Leung, legal assistants with the firm, as well as Brent Glodowski, Mollie Sledd, Rebecca Guambana, and Josh Grant, legal assistants formerly with the firm.

3.    Counsel and the legal assistants maintain contemporaneous records of time spent on each case broken down into tenths of an hour.

4.    The attorneys' fees in this matter are $10,213.50, based upon 10.9 hours of counsel time spent at an hourly rate of $240.00 ($2,616.00); 3.4 hours of counsel time spent at an hourly rate of $210.00 ($714.00); 11.5 hours of counsel time spent at an hourly rate of $195.00 ($2,242.50); 0.9 hours of legal counsel time spent at an hourly rate of $180.00 ($162.00); 21.9 hours of legal counsel time spent at an hourly rate of $105.00 ($2,299.50); and 12.7 hours of legal assistant time spent at an hourly rate of $95.00 ($1,206.50); 4.2 hours of legal assistant time spent at an hourly rate of $90.00 ($378.00); and 7.0 hours of legal counsel time spent at an hourly rate of $80.00 ($595.00). Time spent by counsel and the legal assistants includes: telephone conferences with Defendants' attorney; drafting correspondence to Defendants' attorney; interoffice conferences regarding complaint; interoffice conferences regarding company background; researching company background and business status; inter-office conferences regarding strategy; settlement discussions with the Defendants; preparing settlement documents; and preparing complaint and default pleadings.

5.    Costs in the amount of $769.38 include: $301.66 in internet research fees; $350.00 in court filing fees; $70.65 in United Parcel Service fees; and $47.07 in photocopying and postage expenses.

6.    In light of the facts set forth herein, the undersigned submits the Plaintiffs' claim for fees in this case as reasonable.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Marc Rifkind

Executed on: 9/6/07

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NATIONAL SHOPMEN PENSION FUND,**<br>**AND ITS BOARD OF TRUSTEES**<br><br>       **Plaintiffs,**<br><br>    **v.**<br><br>**RUSCO STEEL COMPANY,** *et al.*<br><br>       **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)   **Civil Action No. 07-cv-110**<br>)<br>)<br>)<br>)<br>)<br>) |

## JUDGMENT AND ORDER

Upon consideration of Plaintiffs' Motion for Default Judgment and the absence of exceptions thereto, and the entire record in this case, it appearing to the Court that Defendants, Rusco Steel Company a.k.a. Rusco Steel Co., Rusco Steel Fabrication Company, Russell Investments, Inc., and Robert S. Russell ("Defendants"), have failed to plead or otherwise defend in this action and that there is no just reason for delay, it is by the Court, this ___ day of _____, 2007,

ORDERED, that judgment by default is hereby entered in the above-captioned case in favor of Plaintiffs and against Defendants; and it is

FURTHER ORDERED, that, pursuant to 29 U.S.C. § 1132(g)(2), Defendants' collective bargaining agreement, and the Agreement and Declaration of Trust governing Plaintiffs, Defendants shall pay to Plaintiffs, and Plaintiffs are awarded, $1,819,934.58 consisting of the following:

(a)  As to the Fund and its Trustees against the Defendants:

      (1)     withdrawal liability in the amount of $1,345,389.00,

      (2)     liquidated damages at the rate of 20% of the delinquent withdrawal liability in the amount of $269,077.80,

      (3)     interest in the amount of $1,633.52 at the rate of 5% per annum for the months of March 2004 through May 2004 and September 2004 through February 2005, 4% per annum for the months of July 2004 through August 2004, and 6% per annum for the month of March 2005 on the delinquent withdrawal payments from date due through the date of default, and interest in the amount of $192,851.38 on the entire remaining withdrawal liability amount, calculated from the date of default through September 5, 2007 at the rate of 6% per annum, and

      (4)     attorneys' fees and costs incurred in this matter in the amount of $10,982.88, and it is

      FURTHER ORDERED, that if Defendants fail to comply with any of the terms of this Order, Plaintiffs may, in addition to pursuing the remedies provided under Fed. R. Civ. P. 69, reopen this case upon motion to this Court and notice to the Defendants, and may, at that time, ask for further appropriate monetary and/or injunctive relief; and it is

      FURTHER ORDERED, that Plaintiffs are awarded execution for the collection of the judgment and that this Court shall maintain jurisdiction of the case for the purpose of enforcing this Order.

_____
Date

_____
United States District Judge
District of Columbia

57935